### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

DARRELL G.[1],
     Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 3:24-cv-025

Rose, J.
Litkovitz, MJ.

**REPORT AND
RECOMMENDATION**

Plaintiff Darrell G. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB).  This matter is before the United States Magistrate Judge for a Report and Recommendation on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in opposition (Doc. 9), and plaintiff's reply (Doc. 10).

## I. Procedural Background

On January 4, 2022, plaintiff protectively filed an application for DIB alleging disability beginning March 31, 2019, due to a back injury, nerve pain, depression, and leg and foot pain due to a back injury.  (Tr. 175-81, 233).  Plaintiff's insured status lapsed on March 31, 2019, the same date as his alleged onset date.  His application was denied initially and upon reconsideration.  Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Nicholas J. Schwalbach.  Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing on January 31, 2023.  (Tr. 33-64).  On March 9, 2023, the ALJ issued a decision denying plaintiff's application.  (Tr. 17-32).  The Appeals

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (Tr. 1-7).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on March 31, 2019.

2. The [plaintiff] did not engage in substantial gainful activity on March 31, 2019 (20 CFR 404.1571 *et seq*).

3. Through the date last insured, the [plaintiff] had the following severe impairment: [l]umbar degenerative disc disease, status post laminectomy (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the following limitations: no more than frequent climbing of ramps/stairs, kneeling, crouching, crawling, and no more than frequent pushing/pulling/operating foot controls with the right lower extremity; no more than occasional stooping and climbing ladders, ropes, and scaffolds; and no concentrated exposure to unprotected heights or dangerous machinery.

6. Through the date last insured, the [plaintiff] was unable to perform past relevant work (20 CFR 404.1565).[2]

---

[2] Plaintiff's past relevant work was a composite job consisting of a building repairer, a skilled, medium position; and a contractor, a skilled, light position. (Tr. 25, 59-60).

7. The [plaintiff] was born [in]… 1965.  Therefore, he was 54 years old 2 months old, and defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] completed a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from March 31, 2019, the alleged onset date, through March 31, 2019, the date last insured (20 CFR 404.1520(g)).

(Tr. 22-27).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. .

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations in the national economy such as mailroom clerk (48,000 jobs), office helper (58,000 jobs), and merchandise marker (632,000 jobs).  (Tr. 26, 61).

. .” *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

On appeal, plaintiff argues that the ALJ erred by "selectively focusing on the evidence that purportedly supports his desired conclusion, to the exclusion of the substantial evidence as a whole."  (Doc. 7 at PAGEID 576-82).  Specifically, plaintiff argues that the ALJ focused on isolated bits of evidence that showed temporary improvement after plaintiff's March 6, 2019 surgery, while the evidence as a whole—which relates back to his back injury prior to the DLI— paints a much different picture.  Plaintiff contends the ALJ failed to consider the evidence fully and fairly.  (*Id.*).

The Commissioner counters that plaintiff's argument ignores that the relevant period is limited to only one day, March 31, 2019, his alleged onset date and date last insured.  The Commissioner contends that the ALJ properly considered the record as a whole, evaluated the opinions in accordance with the appropriate regulations, and incorporated the limitations

supported by the record into the RFC finding. Furthermore, the ALJ properly considered plaintiff's subjective complaints in compliance with agency policy. (Doc. 9 at PAGEID 589-99).

### E.    Analysis

#### 1.  Injury and Treatment History

On March 5, 2019, plaintiff presented to the emergency department at Mercy Health with a history of seeing his chiropractor on February 27, 2019, for a regularly scheduled checkup and adjustment. At that time, he underwent an adjustment, which he described as "very forceful" and which caused significant immediate pain in his low back. Plaintiff described this pain as burning, shooting, and radiating down his right posterior leg. He then went back to the chiropractor the next several days to work on getting this fixed; however, there was no improvement. (Tr. 389). A lumbar spine MRI revealed a right posterior lateral L5-S1 disc herniation, with compromise of the right L5 and S1 nerve roots and moderate right foraminal stenosis; and mild spinal canal stenosis at L2-3-4 lumbar levels. (Tr. 391).

Plaintiff was admitted for surgical intervention on March 6, 2019, and underwent a right L5-S1 facetectomy with a right-hand side L5-S1 discectomy and posterior lumbar interbody fusion and posterolateral fusion of the L5-S1 level. (Tr. 396-98). The day after surgery, plaintiff "found tremendous relief of his leg radiculopathy" and "continued to improve." (Tr. 424). His pain level was well managed, and throughout his hospital stay, his strength was maintained at 5/5 with resisted knee extension, dorsiflexion, plantar flexion, and great toe extension bilaterally. *Id*. He was discharged with instructions for no heavy lifting, bending, twisting or vigorous activity, and instructed "to take frequent walks to stimulate healing of the low back and strengthening of the legs." (Tr. 425).

Two months after his surgery, plaintiff's surgeon reported he had "continued improvement of his preoperative radicular symptoms with exceptional relief of these right-sided symptoms compared to before the operation. He still is having some continued numbness and tingling in the lateral calf on the right hand side but does feel that this is improving. He is continuing to walk well and maintains a walking program." (Tr. 343).

On November 7, 2019, the last treatment note from his orthopedist following the March 2019 lumbar surgery, plaintiff reported he was feeling well and had "occasional symptom of left-sided paraspinal back pain" which was "overall well-tolerated." (Tr. 339). He was walking up to 2 to 3 miles per day, and his symptoms of back pain were improved by change of position or modification of activity. (*Id.*). On examination, plaintiff maintained full strength throughout; his sensation and reflexes were normal; and he maintained strong pulses at the ankles bilaterally. (*Id.*). X-ray imaging showed stable placement of hardware at L5-S1 and stable adjacent levels at L4-L5. Plaintiff's orthopedic surgeon reported that plaintiff "improved well since his operation and with symptoms of left-sided back pain that are well managed." (*Id.*). The surgeon further opined that plaintiff "remains neurologically intact and very active." (*Id.*). He recommended plaintiff advance his activities "carefully" but imposed no particular restrictions. (*Id.*). Plaintiff was to be seen on an as needed basis.

Plaintiff saw his primary care physician, Emily J. McCarty, D.O., on May 13, 2020, over one year after his insured status lapsed, and reported continued low back pain with radiation into his right leg. Tylenol and Ibuprofen had produced no benefit. Dr. McCarty started plaintiff on Gabapentin to help with neuropathic pain. (Tr. 365). Plaintiff also complained of right elbow pain that had been present for the past several months and was "worsening." (*Id.*). Dr. McCarty

noted that plaintiff had been evaluated by his chiropractor with different modalities attempted, including ultrasound and stretching exercises. (*Id.*). Plaintiff received a steroid injection. (*Id.*).

Plaintiff was seen by Tina Sosby, CNP, in October 2021. (Tr. 371-74). At that time, plaintiff was 2 years post-surgery. He continued with right radiculopathy; he reported some improvement with Gabapentin, Flexeril and Prednisone though numbness continued; and he stated his right leg feels weak at times. Ms. Sosby discussed increasing his medication and the possibility of a physical therapy referral. Ms. Sosby reported plaintiff was "quite tearful at times during today's visit secondary to frustration over continued pain, upcoming lawsuit regarding the injury that required emergency surgery on his back and his inability to work." (Tr. 371). Plaintiff was referred to pain management and agreeable to a trial Cymbalta. (*Id*).

### 2. Medical Opinions

#### a. Douglas Spieles, D.C.

Dr. Spieles, a chiropractor, began treating plaintiff as early as October 18, 2021. (Tr. 487). His treatment records show that plaintiff continued to report severe pain, achiness, discomfort, stiffness, tenderness, tightness, and tingling in his back, left side of his neck, left shoulder, and left arm. (Tr. 487-519). On examination, Dr. Spieles reported that plaintiff exhibited reduced range of motion and hyposensitive nerve roots in the lumbar spine, positive straight leg raise, and subluxated/misaligned/dysfunctional cervical, thoracic, and lumbar spines. (*Id.*).

Dr. Spieles completed a "Medical Opinion RE: Ability To Do Physical Activities" on June 23, 2022. (Tr. 473-75). Dr. Spieles opined that plaintiff could stand/walk for less than two hours each total in an eight-hour workday and would need to shift positions at-will from sitting, standing, or walking. (Tr. 473). According to Dr. Spieles, plaintiff would need several

8

unscheduled breaks daily during an eight-hour workday.  (*Id.*).  Dr. Spieles also opined that plaintiff should not sit for long periods, and he should elevate his leg one foot in the air.  (Tr. 474).  He could never lift more than lift 20 pounds occasionally.  (*Id.*).  Plaintiff must avoid exposure to temperature extremes, high humidity, and pulmonary irritants; could occasionally twist, stoop, crouch, and climb stairs; and could never climb ladders.  (Tr. 475).  Dr. Spieles concluded that plaintiff's impairments would likely produce "good days" and "bad days" and that plaintiff would be absent from work more than twice per month.  (*Id.*).

### b.    Tina Sosby, C.N.P.

On August 26, 2022, Tina Sosby, C.N.P., reviewed Mr. Spieles' June 2022 opinion and agreed with the assessment.  (Tr. 485).  She also completed a separate opinion as to plaintiff's mental abilities that same day in which she found his mental abilities to perform job duties were unlimited or good.  She stated that plaintiff suffered from "depression secondary to chronic pain and inability to [return to work]" but clarified that this condition "is not interfering [with plaintiff's] psychological or mental functioning."  (Tr. 480).

### c.    Prior Administrative Medical Findings – Physical Issues

In May 2022, Bruce Hallmann, M.D., a state agency physician, reviewed the record and found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, and stand and walk for 6 hours.  (Tr. 68-71).  Plaintiff could frequently kneel, crouch, crawl, and climb ramps and stairs, and occasionally stoop and climb ladders, ropes, and scaffolds.  (Tr. 70).  Dr. Hallman also found that plaintiff must avoid concentrated exposure to hazards of unprotected heights and dangerous machinery.  (Tr. 71).  In July 2022, Leon Hughes, M.D., a state agency physician, reviewed the record upon reconsideration and affirmed Dr. Hallmann's findings.  (Tr. 78-79).

### d. David Radford, D.C., M.Sc.

In October 2019, at the request of plaintiff's lawyers, Dr. Radford performed a records review of plaintiff's medical records. (Tr. at 324-31). This review was limited to plaintiff's medical records related to his chiropractic visit on February 27, 2019, through his post-surgical discharge on March 9, 2019 (Tr. 324), and addressed only questions of causation, informed consent for treatment, standard of care in chiropractic medicine, and plaintiff's future prognosis. (*See* Tr. 330-331). Dr. Radford opined that a spinal manipulation by plaintiff's chiropractor directly caused the L5 lumbar disc rupture and had breached the standard of care resulting in a "measurable, quantifiable, amount of permanent partial impairment." (Tr. at 330-31). Dr. Radford indicated that plaintiff's condition would likely change over time and would need additional treatment. (Tr. at 331). Dr. Radford also determined that plaintiff's "condition while corrected on March 6, 2019 is not static by any means and likely to change over time. I anticipate that the areas above the L5-S1 spinal fusion are likely to undergo progressive and accelerated degenerative change as a direct result of the surgical (intersegmental) fusion placing undue stress on the adjacent spinal segments, more than likely necessitating future care, including additional surgery, as well as modified work duties going forward." (Tr. 331).

### 3. Plaintiff's Assignment of Error Should Be Overruled

The question for the ALJ was whether plaintiff had a disability on March 31, 2019, his alleged onset date and date last insured, lasting for twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues that "[t]he ALJ impermissibly relied on a heavily selective reading of the evidence rather than a fair, objective reading of the record." (Doc. 7 at PAGEID 576). In this context, plaintiff asserts the ALJ failed to "consider the evidence fully and fairly" and points to

the following: pre-surgical evidence; Dr. Radford's report; Dr. Spieles' opinion and treatment notes; May 2020 examination; and October 2021 examination.  (*Id*.).

### a.  Pre-Surgical Evidence & Dr. Radford's Report

Plaintiff argues the ALJ did not properly consider "the treatment records from the Orthopedic Institute of Ohio dated March 5, 2019 . . . [noting that plaintiff] was seated in a wheelchair . . . in exceptional distress . . . buckled over . . . [and] frequently moaning with significant pain."  (Doc. 7 at PAGEID 578).  Although the ALJ's decision does not describe all the details of plaintiff's condition on March 5, 2019, the ALJ recognized that plaintiff experienced "immediate and severe pain in the . . . lower back, with radiation to his right leg" as a result of a February 27, 2019 chiropractic adjustment and presented to the emergency department after additional chiropractic visits brought him no pain relief.  (Tr. 23).  The ALJ reasonably considered this evidence in the context of plaintiff's condition on March 6, 2019, the day following his back surgery.  As the ALJ noted, following surgical intervention, plaintiff's pain was "well managed" and he experienced "tremendous relief of his leg radiculopathy."  (Tr. 24 (citing Tr. 424)).  The ALJ did not improperly minimize the evidence from March 5, 2019, but reasonably considered it in conjunction with the March 6, 2019 surgery and plaintiff's response thereto.

Plaintiff next argues that the ALJ erred by not discussing Dr. Radford's October 2019 report in his decision.  Plaintiff contends that to the extend Dr. Radford's report was written after plaintiff's insured status expired on March 31, 2019, this would not be a valid reason for ignoring Dr. Radford's report.  Plaintiff argues the ALJ considered other post DLI evidence including the May 2020 examination by Dr. McCarty (Tr. 24; *see* Tr. 365-68) and the November 7, 2019 treatment examination by plaintiff's orthopedic surgeon (Tr. 24; *see* Tr. 339-40) and should

therefore have evaluated Dr. Radford's report as well. (Doc. 7 at PAGEID 581). The Commissioner responds by arguing that Dr. Radford "did not provide a medical opinion" as defined by 20 C.F.R. § 404.1513, and therefore "the ALJ was not obligated to articulate his consideration of the evidence." (Doc. 9 at PAGEID 596). The Commission further argues that Dr. Radford's "summary of [p]laintiff's treatment and opinion that his condition would worsen over time does not support a finding of disability under Title II . . . [because] impairments that worsen after the date last insured cannot be the basis for an award of benefits under Title II." (*Id.,* citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

As an initial matter, to the extent plaintiff suggests the ALJ erred by not including a discussion of Dr. Radford's report in his decision, there is no requirement "that an ALJ discuss every piece of evidence in the record." *Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *3 (6th Cir. June 20, 2023) (citing *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020)). Instead, this Court must evaluate whether the ALJ considered all of plaintiff's medically determinable impairments and supported his decision with substantial evidence. *Id.* (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)).

Second, the Court agrees with the Commissioner's argument that the evidence from Dr. Radford's report does not constitute a medical opinion under the regulations. *See* 20 C.F.R. § 404.1513(a)(2) (A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities). "A medical opinion is distinct from 'objective medical evidence,' *id.* § 404.1513(a)(1), or 'other medical evidence,' *id.* § 404.1513(a)(3), neither of which are required to be considered or assessed for their persuasiveness, *see id.* § 404.1520c(a)." *Robinson v. Comm'r of Soc. Sec.,* No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22,

12

2022).  Dr. Radford's report is not a "medical opinion" because it does not address what plaintiff can still do despite his impairments and does not address plaintiff's abilities to perform the physical, mental, and other "demands of work activities."  20 C.F.R. § 404.1513(a)(2)(i-iii). Rather, Dr. Radford's report is limited to a review of plaintiff's medical records prior to plaintiff's post-surgical discharge on March 9, 2019, and contains a discussion of plaintiff's potential prognosis.  (Tr. 324-31).  Therefore, the ALJ did not err by failing to evaluate Dr. Radford's report for persuasiveness as a medical opinion.  *See Raymond R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-539, 2022 WL 1590817, at *8 (S.D. Ohio May 19, 2022), *report and recommendation adopted*, 2022 WL 2965289 (S.D. Ohio July 27, 2022) (finding that physician assistant's statement that claimant "will likely have pain in his spine for the rest of his life and needs to be cautious with his level of activity because over use will send him back in to poorly controlled pain" was not a regulatory "medical opinion" because it failed to identify what the claimant "can still do despite [his] impairments") (citing *Cadwell v. Comm'r of Soc. Sec.*, No. 3:20-cv-02317, 2022 WL 970023, at *2-3 (N.D. Ohio Mar. 30, 2022) (cleaned up)).

The Court finds that while it may have been prudent for the ALJ to discuss Dr. Radford's report, the ALJ's decision not to do so constitutes at most harmless error.  Dr. Radford's report addressed the following issues posed by plaintiff's personal injury attorneys: (1) causation of plaintiff's injury, (2) importance of informed consent, and (3) standard of care in chiropractic medicine.  (Tr. 352).  Dr. Radford did not examine plaintiff; rather, he reviewed medical evidence beginning in August 2018 and up to plaintiff's discharge after spinal surgery on March 9, 2019. (Tr. 324-31).  Dr. Radford states that "[g]iven the history of the February 27, 2019 event . . . and subsequent surgery, Mr. Gallagher now has a measurable, quantifiable, amount of permanent impairment."  (Tr. 330).  However, Dr. Radford does not describe what that impairment entails,

nor what limitations the impairment would impose on plaintiff. Also, Dr. Radford based his assessment of this impairment on standards found in the "American Medical Association Guides to the Evaluation of Permanent Impairment" and not on the standards under which ALJs must conduct their evaluations. While Dr. Radford reported that plaintiff's condition was "not static," he also clearly stated that plaintiff's condition was "corrected on March 6, 2019." (Tr. 331).

Dr. Radford's statements on plaintiff's prognosis adds little to no additional information on plaintiff's functional capacity because his statement was limited to the evidence of plaintiff's injury and surgery. Unlike Dr. Radford, the state agency physicians, whose opinions the ALJ fully evaluated, considered: the evidence Dr. Radford reviewed; Dr. Radford's report; and the evidence of plaintiff's treatment following his rehabilitation after surgery. In particular, state medical consultant Dr. Leon Hughes reviewed Dr. Radford's October 2019 report, noting the report included a review of plaintiff's March 2019 spinal surgery records and the March 2019 MRI showing a L5 disc rupture and "nerve root compression." (Tr. 76). Dr. Hughes further noted that the "majority" of Dr. Radford's report "discusses prior exams done by other medical personnel and does not include objective [medical evidence of record]." (*Id.*). Dr. Hughes ultimately concluded that "the severity of functional limitation is not supported by clinical evidence . . . [which] shows claimant had surgery on lumbar and was doing well after" and that plaintiff had the RFC for a limited range of light work. (Tr. 77-79). The ALJ reviewed and considered the state agency medical consultant opinions and found them to be persuasive because the opinions were (1) supported by multiple citations to the record, (2) consistent with plaintiff's activity levels as reported to medical staff, and (3) consistent with the November 2019 examination by plaintiff's treatment provider indicating no particular restrictions. (Tr. 24 (citing Tr. 65-81)). As Dr. Hughes fully considered Dr. Radford's report and the evidence subsequent to

14

that report and the ALJ found Dr. Hughes' opinions persuasive, the ALJ's failure to discuss Dr. Radford's report in his decision is harmless.

### b. Post-DLI Evidence

Plaintiff's insured status for purposes of receiving DIB benefits expired on March 31, 2019, which was also his alleged onset date; therefore, he cannot be found disabled unless he can establish a disability on that date. *Blankenship v. Comm'r of Soc. Sec.*, No. 13-12547, 2014 WL 4801829, at *5 (E.D. Mich. Sept. 23, 2014) (citing *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984)). Evidence of disability obtained after the expiration of a claimant's insured status generally has "little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845-46 (6th Cir. 2004) (citing *Cornette v. Sec'y of Health & Human Servs.,* 869 F.2d 260, 264 n. 6 (6th Cir. 1988)); *see also Abney v. Astrue*, CIV A 5:7-394, 2008 WL 2074011, at *6 (E.D. Ky. May 13, 2008). Further, a medical provider's statement assessing a plaintiff as "disabled" is of no relevance where there is no indication that the assessment relates back to the time before the date last insured. *Strong,* 88 F. App'x at 845. Where there is substantial evidence from the relevant time period to support the ALJ's finding that the claimant could perform substantial gainful activity, and the claimant has not presented "any contemporaneous medical evidence of disability from the relevant time period," the claimant has not carried his burden of proving disability. *Id*. at 845-46 (treating physician's retrospective and conclusory opinion that the claimant had been disabled during the relevant period, issued long after the period last insured, was not entitled to significant weight because it was not supported by relevant and objective evidence).

Nonetheless, evidence relating to the post-insured period has some probative value and may be considered by the ALJ to the extent it sheds light on the claimant's health before the expiration of his insured status. *Blankenship*, 2014 WL 4801829, at *5 (citing *Siterlet v. Sec'y of*

*Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). *See also Abney*, 2008 WL 2074011, at *6 (medical evidence from the period after the claimant's date last insured is relevant to the disability determination only "where the evidence relates back to the claimant's limitations prior to the date last insured.") (citing *Higgs,* 880 F.2d at 863) (medical evidence from after date last insured did not impact the disability determination because it "was only minimally probative of claimant's condition before date last insured"); *Begley v. Matthews,* 544 F.2d 1345, 1354 (6th Cir. 1976) ("Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time.")). Medical evidence from the period after the date last insured, to the extent it relates back to the period of alleged disability, is relevant "only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date." *Id*.; *see* 20 C.F.R. § 404.1545(a)(1) (explaining that the claimant's RFC is the "most you can still do despite your limitations"). While post-date last insured medical records may reveal various diagnoses that the plaintiff was given during the relevant time period, providing a diagnosis at a later time "says nothing about his actual limitations [during the period of alleged disability], and also does not of itself relate back to Plaintiff's limitations prior to the date last insured." *Abney*, 2008 WL 2074011, at *6 (quoting *Higgs,* 880 F.2d at 863).

Where the evidence shows that the claimant's impairment had grown progressively worse over time, dismissing evidence because it was generated after the date last insured may be improper. *Id.* (citing *Blankenship v. Bowen,* 874 F.2d 1116, 1122 (6th Cir. 1989) (by requiring impairments to reach Listing level severity before finding the plaintiff became disabled post-date last insured, the ALJ ignored the slowly progressive nature of the plaintiff's schizophreniform

disorder, ignored the severity of that impairment, failed to account for the consultative examining physician's statements about the plaintiff's sullenness and hostility, and gave the appearance the ALJ selected the onset date solely because it fell outside the insured status period).  On the other hand, the ALJ does not err by rejecting evidence created "well after the date last insured [that] likely described a deterioration" in the plaintiff's condition and not the plaintiff's condition during the time period at issue.  *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013) (ALJ's finding that a questionnaire "created well after the date last insured . . . likely described a deterioration" in the plaintiff's condition rather than the plaintiff's condition during the time period in question was an acceptable reason to give the non-treating physician's opinion greater weight); *Siterlet*, 823 F.2d at 920 (treating physician's report was "minimally probative" of plaintiff's condition prior to date last insured where the claimant suffered from one or more degenerative disorders and the treating physician first saw the plaintiff after his insured status had expired).

First, plaintiff cites the May 2020 "office visit" with Dr. McCarty and contends that the ALJ's characterization of the visit as an "examination" that was "generally unremarkable" is unsupported by the record evidence.  (Doc. 7 at PAGEID 576 (citing Tr. 24); *see* Tr. 365-68). Plaintiff argues evidence of the May 2020 visit does not support the ALJ's finding because it "documents continued complaints of low back pain with radiation into [plaintiff]'s right leg following surgical intervention in March 2019" that was "worsening."  (Doc. 7 at PAGEID 576). However, plaintiff omits important context from the ALJ's evaluation of this evidence. Following the ALJ discussion of plaintiff's last visit with his surgeon on November 7, 2019, the ALJ discussed plaintiff's visit with Dr. McCarty.  The ALJ's decision states:

The claimant was not seen again through March 2020[4], and when he did return for treatment in May 2020, examination was generally unremarkable outside of reported left elbow pain and back pain radiating into his right lower extremity (4F). The undersigned acknowledges that the claimant testified he did not have insurance for a period in 2020, but nothing at the May 2020 examination indicates the claimant was more limited than the restrictions set forth herein. Similarly, nothing in the record reasonably establishes that his left elbow pain or subsequently developed impairments more than a year after his date last insured were present or limiting through the date last insured.

(Tr. 24). The ALJ did not fail to evaluate or discuss the specific evidence plaintiff cites but reasonably considered it in evaluating plaintiff's RFC in light of the other record evidence. The Court finds no error in this regard.

Additionally, even if the Court were to accept plaintiff's argument that the ALJ mischaracterized the substance of the May 2020 evidence, which it does not, the ALJ properly considered the visit in his decision. Despite the visit taking place more than a year after plaintiff's DLI and alleged onset date, the ALJ considered the evidence when he "added a limitation to no more than frequent pushing and pulling and operating of foot controls with the right lower extremity to account for the claimant's reports of back pain radiating into his right lower extremity during the May 2020 treatment visit, *giving the claimant the benefit of the doubt* that the symptom may have occurred within one year of his date last insured." (Tr. 24 (emphasis added)).

Lastly, plaintiff argues the ALJ "failed to consider that Dr. Spieles' opinion is supported by his treatment notes and clearly relates back to the time period before the date last insured, because [plaintiff]'s ongoing impairments and symptoms stemmed directly from his pre-DLI back injury." (Doc. 7 at PAGEID 577). The Commissioner contends that the ALJ properly found Dr.

---

[4] March 2020 was 12 months after plaintiff's insured status lapsed on March 31, 2019.

Spieles opinion "not persuasive," as it was inconsistent with the record evidence and failed to

relate back to the period under consideration. (Doc. 9 at PAGEID 594-95).

The ALJ's reasons for finding Dr. Spieles' opinion not persuasive are substantially

supported by the evidence in the record. The ALJ reasonably determined that Dr. Spieles'

opinion was not persuasive because "he did not start treating [plaintiff] until . . . more than two

years after [plaintiff's] date last insured." (Tr. 25 (citing Tr. 371)). The ALJ also found that Dr.

Spieles' opinion was "markedly inconsistent" with (1) plaintiff's "functioning at the November

2019 treatment," (2) plaintiff's "lack of subsequent treatment until May 2020," (3) the May 2020

evaluation findings, and (4) "the prior administrative medical findings of the state agency

consultants." (Tr. 25). The ALJ properly determined that Dr. Spieles' did not cite objective

evidence to support the stated limitations, and his opinion consisted of only a "checkbox form

with minimal to no explanation." (*Id*.). Plaintiff's argument that Dr. Spieles' limitations "clearly

relate[] back" to the date last insured is not supported by the record evidence because Dr. Spieles

never opines that they do (Tr. 473-475), and plaintiff does not cite to any portion of the treatment

notes supporting that assertion. (Doc. 7). While Dr. Spieles' treatment notes may reflect some

"deterioration" of plaintiff's condition, the ALJ properly found the opinion to be not persuasive

when it does not support a finding of disability on the alleged onset date and date last insured.

*Johnson*, 535 F. App'x at 506.

Further, plaintiff's argument that the ALJ erred by finding "the opinion of [Dr. Spieles]

not persuasive because he did not start treating [plaintiff] until after the date last insured . . .

[because] the ALJ then turned around and justified his own findings . . . with citations to evidence

generated after the date last insured" is not well-taken. (Doc. 7 at PAGEID 576 (citing Tr. 24-

25)). The November 2019 treatment examination cited by the ALJ was conducted by the same

orthopedic surgeon who performed the March 6, 2019 back surgery on plaintiff, and unlike with Dr. Spieles, the surgeon's treatment of plaintiff had begun prior to the date last insured. (*See* Tr. 339, 379). Further, the two examinations cited by plaintiff occurred eight and thirteen months after the date last insured (Tr. 24-25; *see* Tr. 339-40, 365-68), while Dr. Spieles did not begin treating plaintiff until over two and a half years after that date. (*See* Tr. 487). Therefore, plaintiff's statement of error regarding the ALJ's evaluation of the May 2020 examination and Dr. Spieles' opinion should be overruled.

Plaintiff further argues that the ALJ erred because "post-DLI evidence that relates back to [plaintiff]'s pre-DLI injury and surgery must be considered as a whole." (Doc. 7 at PAGEID 577 (citing *Rothgeb v. Astrue*, 626 F.Supp. 2d 797, 808 (S.D. Ohio 2009)). However, plaintiff fails to establish that the post-DLI evidence cited relates back to plaintiff's *limitations* prior to the date last insured, *see Abney*, 2008 WL 2074011, at *6, and there is substantial evidence to support the ALJ's findings.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's statement of errors (Doc. 7) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 1/14/2025

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

DARRELL G.,                                        Case No. 3:24-cv-025
      Plaintiff,                                  Rose, J.
                                                   Litkovitz, MJ.
vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).